**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Giovanni Ilma Zapata,<br><br><div align="center">Petitioner,</div><br><div align="center">-v-</div><br>Kenneth Genalo, *in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement*, Kristi Noem, *in her official capacity as Secretary of Homeland Security*, Pam Bondi, *in her official capacity as Attorney General*,<br><br><div align="center">Respondents.</div> | 2:26-cv-01365<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On March 9, 2026, Giovanni Ilma Zapata filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition argues that ICE's detention of Mr. Ilma Zapata without notice and opportunity to be heard since March 9, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act (the "APA"), and that the vehicle stop resulting in his arrest violated the Fourth Amendment to the U.S. Constitution and 8 U.S.C. § 1357. The Petition seeks the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release Mr. Ilma Zapata without GPS monitoring; (2) declaratory relief establishing that Mr. Ilma Zapata's detention violates the Due Process Clause of the Fifth Amendment and the APA; (3) reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C.

§ 504 and 28 U.S.C. § 2412; and (4) any further relief this Court deems just and proper. (Pet. at 11).[1] For the reasons explained below, the Petition is GRANTED IN PART.

Respondents are federal government officials named in their official capacities: (1) Pam Bondi, in her official capacity as Attorney General, U.S. Department of Justice; (2) Markwayne Mullin,[2] the Acting Secretary of the Department of Homeland Security ("DHS"); and (3) Kenneth Genalo, in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement.

Respondents "have no objection to the Court deciding this matter on the papers based on its prior precedent and documents/information that is or is not currently before the Court." (Second Response to Order to Show Cause ("Second Response") at 1, ECF No. 8.) Respondents reaffirmed this position in a telephone conference with the Court on March 11, 2026. (*See* Min. Entry & Order, Mar. 11, 2026.) They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (First Response to Order to Show Cause ("First Response") at 2, ECF No. 7.) Respondents argue that ICE's detention of Mr. Ilma Zapata falls

---

[1] The Petition also seeks the following relief: (1) an Order to Show Cause requiring that Respondents show cause why this Petition should not be granted within three days, and (2) an order enjoining any transfer of Mr. Ilma Zapata outside of the New York City metropolitan area. (Pet. at 11.) On March 10, 2026, the Court effectively granted this relief through the issuance of a Stay of Removal and Order to Show Cause, which requires Respondents to respond to the Petition by March 12, 2026, at the latest, and prohibits Respondents from transferring Mr. Ilma Zapata outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 4.)

[2] The Petition names Kristi Noem, the former Secretary of Department of Homeland Security, as a Respondent. Pursuant to Fed. R. Civ. P. 25(d), Acting Department of Homeland Security Secretary Markwayne Mullin is automatically substituted for Noem as a Respondent in this action. The Clerk of Court is respectfully directed to update the case caption consistent with this substitution.

under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (*Id.*) According to Respondents, Section 1225(b)(2) requires Mr. Ilma Zapata's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Ilma Zapata is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Ilma Zapata had been living in the interior of the United States since around 2022. Indeed, DHS paroled him into the country on December 18, 2022, and ordered his release on his own recognizance on July 12, 2023.[3] Since his arrival in the United States, he applied for asylum, secured work authorization from United States Citizenship and Immigration Services,

---

[3] (*See* Dec. 18, 2022 Record of Deportable/Inadmissible Alien, ECF No. 8-1 at 6–8; July 12, 2023 Notice of Custody Determination, ECF No. 7-1 at 5; July 12, 2023 Order of Release on Recognizance ("ROR"), ECF No. 7-1 at 6–10; *see also* Kennedy Decl. ¶¶ 4–8, ECF No. 8-1.)

and has been working as a food delivery driver. (Pet. ¶¶ 8–9, 11; Declaration of William Kennedy ("Kennedy Decl.") ¶¶ 14, 18, ECF No. 8-1.)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* First Response at 2; Second Response at 1.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[4] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v.*

---

[4] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

*U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[5] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[6]

Moreover, nothing in the record shows that ICE arrested and detained Mr. Ilma Zapata under Section 1225(b)(2) rather than Section 1226(a). (*See* Mar. 9, 2026 Warrant, ECF No. 10-1 at 6 (reflecting that Mr. Ilma Zapata was served with an arrest warrant issued pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of

---

[5] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

[6] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (ECF No. 10). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)).) Respondents first invoked Section 1225(b)(2) as the basis for Mr. Ilma Zapata's detention in the course of this litigation. (First Response at 2.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Ilma Zapata is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Ilma Zapata has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. First Response at 2;

*see also Rodriguez-Acurio*, 2025 WL 3314420, at \*25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection). [7] ICE's detention of Mr. Ilma Zapata without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Ilma Zapata since March 9, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Ilma Zapata without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on March 9, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests

---

[7] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

advanced by ICE's detention of Mr. Ilma Zapata without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Ilma Zapata presents a flight risk or danger to the community.

By contrast, shortly after Mr. Ilma Zapata's entry into the United States on or around December 17, 2022, Respondents paroled Mr. Ilma Zapata into the United States pursuant to Section 1182(d)(5)(A), which allowed him to move to the interior of the United States conditioned on his enrollment in an Alternatives to Detention ("ATD") program and the direction to report to the ICE office located at 535 Federal Plaza in Central Islip, New York. (*See* 2022 Record of Deportable/Inadmissible Alien; Kennedy Decl. ¶¶ 4–5.) Nothing in the record suggests that he failed to comply with these conditions. When Mr. Ilma Zapata appeared for a check-in on July 12, 2023, ICE issued him a Form I-220A Order of Release on Recognizance, which confirmed his release. (*See* ROR; July 12, 2023 Record of Deportable/Inadmissible Alien, ECF No. 8-1 at 9–11; Kennedy Decl. ¶¶ 7–8.) Indeed, ICE's decisions to parole Mr. Ilma Zapata into the United States in December 2022 and to confirm his release on his own recognizance in July 2023 "necessarily involved the determination that [he] posed no flight or public safety risk." *Rodriguez-Acurio*, ___ F.Supp.3d at __, 2025 WL 3314420, at *30 (citing 8 C.F.R. § 212.5(b)); *R.I. v. Wofford*, No. 25-cv-01637, 2025 WL 3768205, at *1 (E.D. Cal. Dec. 31, 2025) ("By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, provided the noncitizen presents neither a security risk nor risk of absconding . . . Such release therefore reflects a determination that the noncitizen is not a danger to the community or a flight risk." (citing 8 C.F.R.

§ 212.5(b)).) Additionally, by Respondents' own account, Mr. Ilma Zapata has appeared for every single check-in and hearing required of him. (*See* Kennedy Decl. ¶¶ 5–7 (appearance at Central Islip ICE check-in), 9, 11–12 (appearance at New York master calendar hearing), 13, 19 (appearance at Florida master calendar hearing).)

Moreover, nothing in the record suggests that a DHS or ICE officer made *any* individualized determination that Mr. Ilma Zapata presented a danger or flight risk prior to ICE's arrest and detention of him on March 9, 2026. David Rodriguez, an ICE Deportation Officer, attests that two ICE officers and a CBP officer conducted a Department of Motor Vehicles ("DMV") records check of a vehicle in Farmingdale, New York, discovered it was registered in the name of an individual with the last name "Guardado" (not Mr. Ilma Zapata), and conducted database searches to discover that the vehicle was registered to a citizen of Honduras who was in the United States without authorization. (Declaration of David Rodriguez ("Rodriguez Decl."), ECF No. 10-1 ¶¶ 6–7.) Rodriguez does not address *why* ICE selected the vehicle driven by Mr. Ilma Zapata for such a check. (*See id*.) Rodriguez attests that the officers followed the vehicle until it stopped at a restaurant and the driver exited. (*Id*. ¶ 8.) When the driver returned, the officers approached him, asked for identification, and discovered that it was Mr. Ilma Zapata. (*Id*. ¶¶ 9–12.) The officers determined after a database check that Mr. Ilma Zapata did not have authorization to be in the United States. (*Id*. ¶ 12.) According to Rodriguez, Acting Supervisory Detention and Deportation Officer Michael Damiano completed and signed a Form I-200 Warrant of Arrest.[8] (*Id*. ¶ 14; Mar. 9, 2026 Warrant.) Thereafter, the officers at the

---

[8] The Court notes that ICE did not serve Mr. Ilma Zapata with an arrest warrant until *after* he had arrived at the Nassau County Correctional Center, as shown by the face of the warrant, which indicates that it was served on Mr. Ilma Zapata in East Meadow, New York—not in

scene arrested Mr. Ilma Zapata and transported him to the North Amityville Fire Department before transferring him to the Nassau County Correctional Center. (Rodriguez Decl. ¶¶ 15–21.)

At no point during these events did any of the officers involved conduct an initial custody determination to evaluate whether Mr. Ilma Zapata presented a risk of flight or danger to the community. Based on the record, the ICE officers who arrested and detained him had no reason to believe that he presented any such risks.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Ilma Zapata's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings— Respondents' detention of Mr. Ilma Zapata with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Ilma Zapata was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[9, 10] *See Lopez Benitez*, 795 F. Supp.

---

Farmingdale, New York, where ICE arrested him. (*See* Mar. 9, 2026 Warrant; Rodriguez Decl. ¶¶ 8–17.)

[9] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Ilma Zapata, that provision is plainly inapplicable to him. Mr. Ilma Zapata is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Ilma Zapata since March 9, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

[10] The Court declines to credit any post-hoc intimations by Respondents regarding Mr. Ilma

10

3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Ilma Zapata from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Ilma Zapata is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant

---

Zapata's alleged "fail[ure] to notify EOIR or ICE of [his] address changes . . . as required by his conditions of release" on recognizance, which were set in July 2023. (Kennedy Decl. ¶ 20; ROR.) Nothing in Respondents' submissions demonstrates that any DHS or ICE official found that Mr. Ilma Zapata had violated the ROR, much less that any official at ICE ever revoked the ROR,  communicated such a determination to Mr. Ilma Zapata, or provided him notice and opportunity to be heard about such a revocation at any time before the March 9, 2026 arrest. (*See* First Response; Second Response; Kennedy Decl.; Rodriguez Decl.) Despite Respondents' submission of several declarations, none of their submissions show that any of the arresting officers or Damiano were aware of any revocation of Mr. Ilma Zapata's ROR prior to the issuance of the arrest warrant or the carrying out of the arrest. (*See* Kennedy Decl.; Rodriguez Decl.)

11

circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Ilma Zapata is not rendered meaningless.

Additionally, Mr. Ilma Zapata "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Ilma Zapata was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Ilma Zapata without any condition for electronic monitoring, including but not limited to GPS monitoring.

## CONCLUSION

Accordingly for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part.

As ordered at the March 11, 2026 telephone conference, Respondents must immediately release Mr. Ilma Zapata from custody. (Min. Entry & Order, Mar. 11, 2026.) Respondents must coordinate with Mr. Ilma Zapata's counsel and thereafter release Mr. Ilma Zapata from the Nassau County Correctional Center, without any electronic monitoring, including but not limited to GPS monitoring, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than 8:00 p.m. on March 11, 2026. Respondents must release Mr. Ilma Zapata with all of his belongings that are in Respondents' possession, including but not limited to all identification cards, clothing, and

12

money. To the extent that any of Mr. Ilma Zapata's belongings are located at 26 Federal Plaza, Respondents shall release those items to Petitioner's counsel by March 12, 2026. All other belongings must be returned to Mr. Ilma Zapata prior to or at the time of his release directly from the Nassau County Correctional Center.

Respondents shall confirm compliance with these directives, including by identifying the specific individual to whom Mr. Ilma Zapata was released and how and when all belongings, including identification cards, were returned in a filing on the docket by 11:59 p.m. on March 11, 2026.[11]

Additionally, pending the issuance of any final removal order against Mr. Ilma Zapata, Respondents are enjoined from denying Mr. Ilma Zapata bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Ilma Zapata may file an application for attorneys' fees and costs incurred in pursuing this action by June 10, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Ilma Zapata the requested relief, including arguments that the detention violates the Fifth Amendment right to substantive due process and the APA and that the vehicle stop violates the Fourth Amendment, are now moot and unnecessary to resolve.

---

[11] The Court notes that Respondents timely submitted this filing last night. (ECF No. 12.)

The Show Cause hearing scheduled for March 13, 2026 at 3:00 PM in the Alfonse

D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.


Dated: Central Islip, New York
        March 12, 2026

　　　　　　　　　　　　　　　　　 */s/ Nusrat J. Choudhury*
　　　　　　　　　　　　　　　　　 NUSRAT J. CHOUDHURY
　　　　　　　　　　　　　　　　　 United States District Judge